ELLEN CALLAHAN, Respondent, *v.* MICHAEL O'BRIEN, Appellant, and JOHN GRADDY, MARY LEAHY, MARGARET NEVILLE, CATHERINE BURNS, ELLEN O'BRIEN, JOHN O'BRIEN, ANN MURPHY, MARGARET JAMESON and JOHN JACKSON, Respondents, Impleaded with Others.

*Distinction in the descent of real property acquired by purchase and that acquired by descent — resident citizen and non-resident alien heirs — citizen heir compelled to trace his right through two non-resident alien ancestors.*

The collateral relatives, who are the heirs of a citizen who has died intestate, seized of real estate which she acquired by purchase, though some of them be resident citizens and the others non-resident aliens, take such real property by descent in the same manner and proportion as if they had all been resident citizens; but real estate of which the intestate died seized, acquired by descent, descends to the heirs who are resident citizens to the exclusion of the heirs who are non-resident aliens.

An heir who is a resident citizen is entitled to inherit although he be compelled to trace his right through two non-resident alien ancestors.

APPEAL by the defendant Michael O'Brien from an interlocutory judgment of the Supreme Court, rendered after a trial at the New York Special Term and entered in the office of the clerk of the city and county of New York on the 8th day of February, 1893, declaring the interest of the several parties to this action in certain real property and determining the rights of the parties therein.

June 8, 1869, Catherine Callahan, a citizen of the United States and a resident of the State of New York, acquired by purchase and grant the absolute fee of No. 18 Perry street. The deed to her is duly recorded in the office of the register of the city and county of New York in book No. 1119 of deeds at page 159.

November 15, 1869, William Callahan, a citizen of the United States and a resident of the State of New York, acquired by purchase and grant the absolute fee of No. 58 Greenwich avenue. The deed to him is duly recorded in said register's office in book No. 1123 of deeds at page 330. At the date of this deed said William Callahan and Catherine Callahan were husband and wife.

February 27, 1873, William Callahan died intestate and seized in fee of said lot, leaving him surviving William T. Callahan, his son

and only heir, who was a citizen of the United States and a resident of the State of New York, and Catherine Callahan, his widow.

March 26, 1888, said William T. Callahan died intestate, seized in fee of No. 58 Greenwich avenue, and leaving Catherine Callahan, his mother, his sole heir, who then became seized in fee of said lot.

March 1, 1890, said Catherine Callahan died intestate and seized in fee of said two pieces of real estate. She left her surviving no ancestors nor descendants, but left the following collateral relatives : Ellen Callahan, a sister ; John Graddy, a nephew, the only surviving child and heir of John Graddy, a deceased brother of Catherine ; Ann Murphy and Margaret Jameson, nieces, the only surviving children of Anne Morrissey, a deceased sister of Catherine Callahan ; John Jackson, the only surviving child and heir of Ellen Jackson, a deceased daughter of said Anne Morrissey, he being a grandnephew of the intestate and a grandson of Anne Morrissey ; Michael O'Brien, Mary Leahy, Margaret Neville, Catherine Burns, Ellen O'Brien and John O'Brien, nephews and nieces, the only surviving children and heirs of Margaret O'Brien, a deceased sister of Catherine Callahan.

The plaintiff, Ellen Callahan, and the defendants Michael O'Brien and John Jackson are resident citizens of the United States, but all of the other litigants and their husbands and wives are citizens of the United Kingdom of Great Britain and Ireland, residing in Ireland, of which kingdom their parents and grandparents were citizens and residents.

The Special Term held that the following persons were entitled to inherit the two pieces of realty as heirs at law of Catherine Callahan, deceased, in the following proportions : Ellen Callahan, six-twenty-fourths ; John Graddy, six-twenty-fourths ; Ann Murphy, Margaret Jameson and John Jackson, two-twenty-fourths each ; Michael O'Brien, Mary Leahy, Margaret Neville, Catherine Burns, Ellen O'Brien and John O'Brien one-twenty-fourth each.

*Abram Kling,* for the appellant.

*William P. S. Melvin,* for the plaintiff (respondent).

*Robert M. Boyd, Jr.,* for Ann Murphy and Margaret Jameson defendants (respondents).

FOLLETT, J. :

One of the questions presented by the record being whether the rights of the litigants are the same in both pieces of land, it will be most convenient to consider to whom each parcel descended, so we will first determine the rights of the parties in No. 18 Perry street, which the intestate acquired by purchase and grant.

Section 4 of chapter 115 of the Laws of 1845, as amended by chapter 38 of the Laws of 1875, provides :

"§ 4. If any alien resident of this State, or any naturalized or native citizen of the United States, who has purchased and taken, or hereafter shall purchase and take, a conveyance of real estate within this State, has died, or shall hereafter die, leaving persons who, according to the statutes of this State, would answer the description of heirs of such deceased person, or of devisees, under his last will, and being of his blood, such persons so answering the description of heirs, or of such devisees of such deceased person, whether they are citizens or aliens, are hereby declared and made capable of taking and holding, and may take and hold, as heirs, or such devisees of such deceased person, as if they were citizens of the United States, the lands and real estate owned and held by such deceased alien or citizen at the time of his decease. But if any of the persons so answering the description of heirs, or of such devisees, as aforesaid, of such deceased person, are males of full age, they shall not hold the real estate hereby made descendible or devisable to them as against the State, unless they are citizens of the United States, or, in case they are aliens, unless they make and file in the office of the Secretary of State the deposition or affirmation mentioned in the first section of this act."

The counsel for the plaintiff insists that John Jackson did not inherit because his deceased mother and deceased grandmother were non-resident aliens, and being compelled to trace his right through two such ancestors, is not within section 22 of chapter 2 of part 2 of the Revised Statutes, which provides : "§ 22. No person capable of inheriting under the provisions of this chapter shall be precluded from such inheritance by reason of the alienism of any ancestor of such person." The contention of the counsel was decided adversely to him by the Court of Appeals in *McCarthy* v. *Marsh* (5 N. Y. 263). Jackson is entitled to inherit.

The eleven persons whom the Special Term held inherited this parcel " answered the description of heirs of such deceased person " (Catherine Callahan) " according to the statutes of this State," and all of them took the land by inheritance, unless the contention of the counsel for the appellant that the eight non-resident aliens did not take jointly with the three citizens, but that the citizens took to the exclusion of the aliens.

The statute quoted makes no such distinction. It does not provide that in case an intestate dies leaving no persons answering the description of heirs who are citizens, that in that case aliens answering such description may take, nor does it provide that in case an intestate dies leaving persons answering the description of heirs, some of whom are citizens and others aliens, that only the former can take, but the language of the section is comprehensive enough to include citizens and aliens, which is, we think, what the Legislature intended to do.

*Luhrs* v. *Eimer* (80 N. Y. 171) is not to the contrary. That case arose over the land of a naturalized citizen who died intestate in 1866, before the amendment of chapter 115 of the Laws of 1845. The question involved was whether aliens so related to the decedent, a naturalized citizen, as to answer the description of heirs inherited by force of chapter 115 of the Laws of 1845, and it was held that they did not. It was said in that case : " The fourth section declares that if any ' alien resident,' who has taken or shall take a conveyance of lands, has died or shall die, leaving persons, who, according to the statutes of this State, answer the description of heirs, such persons, whether citizens or aliens, shall be capable of taking and holding as heirs of the ' deceased alien,' etc." This remark tends to support the construction we have given the section.

The result is that No. 18 Perry street descended to the litigants in the following proportions : The plaintiff and John Graddy took six-twenty-fourths each; the children of Margaret O'Brien took one-twenty-fourth each; the children and grandson of Anne Morrissey took two-twenty-fourths each.

This brings us to the consideration, to whom did No. 58 Greenwich avenue descend? As before stated, Catherine Callahan, the intestate, acquired this parcel by descent from her son.

Does land acquired by descent by " any alien resident of this

State or any naturalized or native citizen of the United States," descend to aliens by force of the section hereinbefore quoted ? The language of the statute seems to us so explicit as not to admit of serious question. It is: "If any alien resident of·this State, or any naturalized or native citizen of the United States, who has purchased and taken, or hereafter shall purchase and take, a conveyance of real estate within this State," etc. The idea that· the statute embraces only lands acquired by purchase is emphasized by the use of the words, "purchase and take, a conveyance of real estate," which seems to exclude from the operation of the section lands acquired by descent. The word "purchase" has a well-settled meaning at common law and in the jurisprudence of this State. Words and terms having a precise and well-settled meaning in the jurisprudence of the country are to be given that meaning when used in its statutes, unless it is plain that they were· used in a different sense. (*Cruger* v. *The Hudson River Railroad Co.*, 12 N. Y. 190, 198; *Wynehamer* v. *The People*, 13 id. 378, 427; *McCool* v. *Smith*, 1 Black, 459; *Stephenson* v. *Higginson*, 3 H. L. Cas. 638.)

We cannot regard the use of these words "purchase and take a conveyance of real estate" as accidental nor as used in a different sense than theretofore given them in the real property law of this State. The same words are found in chapter 115, Laws of 1845, and in chapter 261, Laws of 1874.

We are asked to give controlling force to the words: "The lands and real estate owned and held by such deceased alien or citizen at the time of his decease," and hold that they embrace all lands, however acquired. The decedent having acquired one piece of land by purchase and conveyance and another by descent, it is urged that both fall within the section and both descend to aliens. Such a construction seems to us unnatural and to warp the section from its true meaning.

It would be as reasonable to hold that in case a person had acquired parcels of land by purchase and others by descent, and had died seized only of those acquired by the latter mode, that they would descend to his alien relatives answering to the description of heirs, because the intestate had once had lands acquired by purchase. How the acquisition of one parcel by purchase can affect the right

of aliens to succeed to another acquired by descent we are unable to see. The reasoning in *Stamm* v. *Bostwick* (122 N. Y. 48), is an answer to this argument. Whether non-resident aliens take by force of the statute under consideration lands acquired by descent was discussed in *Branagh* v. *Smith* (46 Fed. Rep. 517), and the conclusion was reached that the statute applied only to lands acquired by purchase, and was not applicable to lands acquired by descent.

We think that the non-resident aliens took no interest in the land acquired by the intestate by descent, and that the avails arising from the sale of that parcel must be distributed among the heirs who are citizens of the United States. This leads to a modification of the judgment so far as it affects the piece of land under consideration.

The judgment, so far as it relates to No. 18 Perry street, should be affirmed, but in so far as it relates to No. 58 Greenwich avenue it should be modified by providing that one-third of the avails be distributed to the plaintiff, one-third to John Jackson and one-third to Michael O'Brien, and that the judgment, as so modified, should be affirmed, without costs in this court to any party.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment modified as directed in opinion, and, as modified, affirmed, without costs in this court to any party.